(No. 77059█

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RUSSELL GAZELLE, Appellee.

*Opinion filed March 23, 1995.*

NICKELS, J., joined by FREEMAN and McMORROW, JJ., concurring.

Roland W. Burris, Attorney General, of Springfield, and Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman and Elliott Turpin, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Russell Gazelle, pled guilty to burglary in McLean County in June 1990 and was placed on probation for 42 months. One of the conditions of defendant's probation was that defendant not violate a criminal statute in any jurisdiction. In March of 1992, he was convicted of nine counts of burglary and nine counts of theft in Piatt County and sentenced to five years in the penitentiary on those charges. Thereafter, in June of 1992, a supplemental petition was filed in McLean County to revoke the McLean County probation. The petition was premised on the Piatt County convictions. Attached to the petition was a copy of the records from Piatt County relative to the defendant's conviction and sentence there.

At the hearing on the petition to revoke defendant's probation, defendant was admonished by the judge that he could be sentenced to the penitentiary for the McLean County burglary for a term of not less than three or more than seven years. The defendant indicated that he understood and then admitted to the allegations of the petition. A sentencing hearing was held and the defendant was sentenced to a penitentiary term of five years to be served consecutively to the Piatt County sentence.

On appeal, the defendant objected to the sentence. He claimed that he was misinformed by the judge. He understood the judge's explanation to mean that he could receive a maximum of seven years in prison but not two five-year consecutive sentences, which would be, in effect, 10 years. The appellate court agreed with the defendant. (259 Ill. App. 3d 462.) It held that in order to protect a defendant's due process rights, a trial court must inform the defendant of the possibility of consecutive sentences before the defendant admits to the allega-

tions in a petition to revoke probation. The appellate court reversed the trial court's order revoking the defendant's probation and remanded the cause for a new revocation hearing. We reverse and reinstate the defendant's sentence.

We acknowledge that the explanation given by the trial judge in the probation revocation proceedings may have misled the defendant as to his sentencing exposure. The defendant may have reasoned that, with a five-year sentence already imposed in Piatt County, the longest sentence he could have received from the McLean County proceedings would be an additional two years. However, the defendant's possible confusion is immaterial to the outcome of this case. His admission to the Piatt County convictions in the McLean County revocation proceedings added nothing. Whether the defendant denied the petition, stood mute, or admitted the allegations, the outcome would not have changed. He was on probation for burglary. He had a subsequent conviction for burglary in another county. His probation was violated by that subsequent burglary and he had no defense to the petition to revoke his probation. We can and do take judicial notice of the defendant's convictions in both McLean and Piatt Counties which are part of the record in this case. Reversal and remand of the McLean County probation revocation proceedings for a new revocation hearing would change nothing and would be a waste of judicial time and manpower.

Accordingly, the judgment of the appellate court is reversed. The judgment of the circuit court of McLean County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE NICKELS, concurring:

I write separately to address the issue presented for review: whether due process requires a trial court to

admonish a probationer of the possibility of consecutive sentences prior to the probationer's admitting facts contained in a petition to revoke probation. I disagree with the majority that this issue need not be addressed because defendant's plea "added nothing" to the proceeding. (165 Ill. 2d at 95.) The fourteenth amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." (U.S. Const., amend. XIV.) The revocation of probation may deprive a probationer of his liberty. Thus, probation may only be revoked, even where evidence is overwhelming against the probationer, where due process of law has been afforded. However, because I believe that due process did not require that defendant be warned of the possibility of consecutive sentences and that defendant did in fact receive all the due process protections to which he was entitled, I concur in the majority's holding reversing the appellate court.

### Analysis

The United States Supreme Court has noted that a probationer is entitled to certain due process rights upon revocation of probation. (*Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756.) This court has noted that under *Gagnon* such rights include the right:

> "to written notice of the alleged violation, to disclosure of the evidence against him, to be heard in person and to present testimonial and documentary evidence, to confront and cross-examine adverse witnesses, to be judged by a neutral and detached hearing body, to receive a written statement by the fact finders stating the evidence relied on and the reason for revocation, and, in some instances, to receive assistance of counsel." (*People v. DeWitt* (1979), 78 Ill. 2d 82, 85.)

These due process procedures insure that the probationer's "liberty is not unjustifiably taken away." *Gagnon*, 411 U.S. at 785, 36 L. Ed. 2d at 664, 93 S. Ct. at 1761.

This list of rights, however, is not dispositive of the issue before us. The *Gagnon* Court dealt with a different type of revocation procedure from Illinois' and further did not address the issue presented here. *Gagnon* dealt with a probation revocation where sentence had already been established at the original criminal conviction. Thus, instead of being sentenced after a revocation of probation, the probationer in *Gagnon* served a sentence originally imposed at the time of his criminal prosecution. In Illinois, however, a new sentence is imposed upon revocation of probation. See 730 ILCS 5/5—6—4(e) (West 1992).

The *Gagnon* Court noted an important difference between these types of probation revocation. Where sentencing does not follow the revocation of probation, a probationer has no right to an attorney in most instances. However, a probationer who is sentenced after probation revocation is entitled to an attorney. (*Gagnon*, 411 U.S. at 781, 36 L. Ed. 2d at 661, 93 S. Ct. at 1759; *Mempa v. Rhay* (1967), 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254.) This is because "counsel is required 'at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected.' " (*Gagnon*, 411 U.S. at 781, 36 L. Ed. 2d at 661, 93 S. Ct. at 1759, quoting *Mempa v. Rhay*, 389 U.S. at 134, 19 L. Ed. 2d at 340, 88 S. Ct. at 257.) Thus, the Supreme Court has recognized that more process is due at probation revocation hearings where sentence will be imposed, such as in Illinois, than one where the sentence has already been established. See *United States v. Segal* (9th Cir. 1977), 549 F.2d 1293, 1296.

Moreover, the *Gagnon* Court did not address the issue presented here: What process is due where a probationer admits facts in a petition to revoke probation and sentencing will follow upon revocation? Consequently, the inquiry into whether due process was

afforded must go beyond the listing of specific rights in *Gagnon*. The inquiry must delve into whether "fundamental fairness—the touchstone of due process" required that such warning be given. *Gagnon*, 411 U.S. at 790, 36 L. Ed. 2d at 666, 93 S. Ct. at 1763.

Illinois Supreme Court Rule 402 requires the trial court to admonish a defendant of the possibility of consecutive sentences upon a plea of guilty. However, this court has noted that Rule 402 does not apply at proceedings to revoke probation:

> "A defendant in a criminal trial or a probation hearing may ultimately be incarcerated as a result [of a guilty plea], but there is a qualitative difference between a criminal conviction and the revocation of probation ***." (*People v. Beard* (1974), 59 Ill. 2d 220, 226.)

The appellate court in this case found that while Rule 402 does not apply to probation revocation proceedings, due process requires the warning of consecutive sentences to ensure that the probationer's plea is knowing and voluntary. The appellate court stated:

> "[W]e find no principled basis for distinguishing between guilty pleas and admissions given at probation revocation hearings regarding what admonishment the court must give to a defendant to inform him of the maximum sentence the court can impose." (259 Ill. App. 3d 462, 465.)

However, another panel of the appellate court has held that due process under *Gagnon* does not require the trial court to warn a probationer of the possibility of consecutive sentences at a probation revocation proceeding. *People v. Hoyt* (1984), 129 Ill. App. 3d 331, 336-37.

While more process is due in Illinois at a probation revocation procedure than in the type of procedure at issue in *Gagnon*, I believe that defendant was afforded more than the minimal requirements of due process. I first note that defendant has cited no cases that have found due process to require a warning concerning consecutive sentences at probation revocation hearings. And, while Rule 402 provides that the court must advise

a defendant upon a plea of guilty as to the possibility of consecutive sentences, that rule does not apply to revocations of probation.

I further note that while Rule 402 requires courts to warn defendants of the possibility of consecutive sentencing, its Federal counterpart, Federal Rule of Criminal Procedure 11, does not, and Federal courts have noted that warnings of consecutive sentences are not required at pleas of guilty entered at criminal prosecutions. (See *United States v. Theodorou* (N.D. Ill. 1983), 576 F. Supp. 1007, 1011; *Faulisi v. Daggett* (7th Cir. 1975), 527 F.2d 305, 309; *Paradiso v. United States* (3d Cir. 1973), 482 F.2d 409; *Johnson v. United States* (9th Cir. 1972), 460 F.2d 1203.) The court in *Theodorou* stated:

> "[N]either Rule 11 [n]or the due process clause require a court to alert a defendant to possible consecutive sentences under a multi-count indictment before he pleads guilty. [Citations.] If a court does not have to advise a defendant of possible consecutive sentences pursuant to one indictment, it follows that a court would not have to advise a defendant that the sentence he is receiving will run consecutive to a sentence imposed in a wholly separate indictment." (*Theodorou*, 576 F. Supp. at 1011.)

If such warnings are not constitutionally mandated at criminal prosecutions, they are not required at proceedings to revoke probation.

Finally, as the State notes, defendant was represented by counsel at the revocation hearing. Thus, the additional process *Gagnon* noted was due at probation revocation proceedings where a probationer is sentenced after revocation was provided here. In addition, the trial court thoroughly admonished defendant prior to admitting the facts in the petition. Of note, the trial court warned defendant about the length of the sentence for the original burglary and the possibility of fines and restitution. Moreover, defendant stated that he had fully discussed his rights and the potential penalties with his

attorney. The only aspect of the court's warning to which defendant objects is the trial court's failure to warn defendant of consecutive sentences. Due process, I believe, did not require this warning. A review of defendant's plea shows that fundamental fairness was met and that defendant's plea was knowing and voluntary. I thus concur in the majority's decision to reverse the appellate court.

JUSTICES FREEMAN and McMORROW join in this concurrence.